**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **IN RE THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS** | Misc. Action No. _____<br><br>Related to:<br>No. 17-cr-232 (EGS)<br><br>**Oral Argument Requested** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
APPLICATION OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE
PRESS FOR THE PUBLIC DOCKETING OF COURT RECORDS IN CRIMINAL
MATTER NO. 17-cr-232 (EGS)**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

BACKGROUND ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 5

    I.    The Priestap FD-302 is a judicial record presumptively open to the public ....................... 5

    II.   The strong presumption of public access to the Priestap FD-302 is not overcome ............ 9

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Alabama Dep't of Corrections v. Advance Local Media, LLC*, 918 F.3d 1161 (11th Cir. 2019)... 7

*Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009)................................................................. 7

*Brady v. Maryland*, 373 U.S. 83 (1963) ........................................................................... 11

*EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406 (D.C. Cir.1996)................................... 9

*F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404 (1st Cir. 1987)................................. 6

*In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121 (D.C. Cir. 2020) ......................................................................................................................... 5

*In re New York Times Co.*, 585 F. Supp. 2d 83 (D.C. Cir. 2008) ............................... 10, 11

*Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268 (D.C. Cir. 1991) .................. 9

*MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661 (D.C. Cir. 2017) ........ 5, 6

*Nixon v. Warner Commc'ns*, 435 U.S. 589 (1978) ............................................................. 9

*Smith v. U.S. District Court*, 956 F.2d 647 (7th Cir. 1992) .............................................. 6

*United States v. Aref*, 533 F.3d 72 (2d Cir. 2008) ........................................................... 10

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ..................................... *passim*

*United States v. Wecht*, 484 F.3d 194 (3d Cir. 2007) ....................................................... 7

**Other Authorities**

Adam Goldman and Katie Benner, *Ex-F.B.I. Official is Said to Undercut Justice Department Effort to Drop Flynn Case*, N.Y. Times (May 13, 2020)................................ 1, 5, 6, 11

Anna Salvatore and Benjamin Wittes, *Oral Argument Summary:  U.S. v. Flynn* (Sept. 29, 2020)........................................................................................................... 8

*Behind the Justice Department's Split Over the Flynn Dismissal*, CNN (May 15, 2020) ........... 11

Bryan Bender, *Trump Names Mike Flynn National Security Adviser*, Politico (Nov. 17, 2016) ... 1

Carol E. Lee and Paul Sonne, *U.S. Sanctions Russia Over Election Hacking; Moscow Threatens to Retaliate*, W.S.J. (Dec. 29, 2016) ................................................................... 2

Catherine Herridge, *Attorney General William Barr on Michael Flynn, Obamacare and Coronavirus Restrictions – Transcript*, CBS News (May 12, 2020)........................... 4

David Ignatius, *Why Did Obama Dawdle on Russia's Hacking?*, Wash. Post (Jan. 12, 2017) ..... 2

Josh Gerstein et al., *Documents Show FBI Debated How to Handle Investigation of Michael Flynn*, Politico (Apr. 29, 2020)................................................................. 4

Mikhaila Fogel, *Director of National Intelligence Declassifies Flynn-Kislyak Transcripts*, Lawfare (May 29, 2020) ........................................................................................ 2, 11

Miles Parks et al., *The James Comey Saga, In Timeline Form*, Nat'l Pub. Radio (last visited Sept. 28, 2020) ................................................................................................................ 3

Steven Nelson and Ebony Bowden, *Trump Calls Michael Flynn Prosecution 'Treason' Done by 'Human Scum'*, N.Y. Post (May 7, 2020)............................................................. 10

Tierney Sneed and Josh Kevensky, *Sorry Mike Flynn, Judge Not Ready to Dismiss Your Case*, Talking Points Memo (Sept. 29, 2020)................................................................... 9

The Reporters Committee for Freedom of the Press (the "Reporters Committee" or "Applicant") hereby submits this Memorandum of Points of Authorities in support of its Application for the public docketing of a piece of evidence at the center of the current proceedings in the criminal prosecution of General Michael T. Flynn (ret.) ("Defendant"), Crim. No. 17-cr-232 (EGS).  Specifically, Applicant seeks the public docketing of a Federal Bureau of Investigation ("FBI") report memorializing the interview of former FBI counterintelligence official Edward William Priestap (the "Priestap FD-302") by investigators from the U.S. Attorney's Office for the Eastern District of Missouri, which is engaged in an ongoing review of this prosecution at the order of Attorney General William Barr (the "Jensen Review").  In May, *The New York Times* reported that the Justice Department was finalizing the Priestap FD-302 and would provide it to the Court.  Appl., Exhibit A, Adam Goldman and Katie Benner, *Ex-F.B.I. Official is Said to Undercut Justice Department Effort to Drop Flynn Case*, N.Y. Times (May 13, 2020), https://perma.cc/HN5G-AKWK ("A Justice Department official said that they were in the process of writing up a report on the interview and that it would *soon be filed with the court*.") (emphasis added).  It does not, however, appear to have been publicly docketed by the Court or the parties.  The Priestap FD-302 is central to the adjudicatory process in this case and is therefore a judicial record.

## BACKGROUND

Defendant is a retired lieutenant general in the United States Army and a former director of the Defense Intelligence Agency.  In November 2016, he was named as President Donald J. Trump's first National Security Advisor.  *See* United States' Supplemental Mem. in Aid of Sentencing, ECF No. 150 at 27; Bryan Bender, *Trump Names Mike Flynn National Security Adviser*, Politico (Nov. 17, 2016), https://perma.cc/KP4X-4X5P.  On December 29, 2017, the

1

outgoing administration of President Barack Obama publicly announced a series of punitive and deterrent measures against the Russian government in response to the administration's finding of Russian interference in the 2016 election.  ECF No. 150 at 6.  While Russia immediately vowed to retaliate, it ultimately took no action.  *Id.* at 7; Carol E. Lee and Paul Sonne, *U.S. Sanctions Russia Over Election Hacking; Moscow Threatens to Retaliate*, W.S.J. (Dec. 29, 2016), https://perma.cc/EG59-FTBK.

On the day the Obama administration measures were announced, Defendant spoke by phone to the Russian ambassador to the United States, Sergey Kislyak, and urged Russia to only respond with "reciprocal measures" and not to escalate the dispute into a "tit for tat."  ECF No. 150 at 7; Br. for Ct.-Appointed *Amicus Curiae*, ECF No. 223-2 at 8; Mikhaila Fogel, *Director of National Intelligence Declassifies Flynn-Kislyak Transcripts*, Lawfare (May 29, 2020), https://perma.cc/PP58-X5RE.  Two days later, Ambassador Kislyak called Defendant and reported that Defendant's proposal to "act with cold heads" is what "invested in the decision" regarding the Russian response.  Fogel, *Transcripts*, *supra*.

On January 12, 2017, eight days before the inauguration, *Washington Post* columnist David Ignatius disclosed in a column the existence of the conversations between Defendant and Ambassador Kislyak and raised the possibility that the two had discussed the Obama administration's measures.  David Ignatius, *Why Did Obama Dawdle on Russia's Hacking?*, Wash. Post (Jan. 12, 2017), https://wapo.st/3cwzB7W.  Defendant denied doing so in conversations with several White House officials, including Vice President-elect Mike Pence, who restated that denial in media appearances.  ECF No. 150 at 8.  On January 23, 2017, then-White House Press Secretary Sean Spicer said that he had recently spoken to Defendant, who

had again denied speaking to the Russian Ambassador about the Obama administration's measures.  *Id.*

 The next day, January 24, 2017, FBI special agents with "Crossfire Razor," a counterintelligence investigation focused on Defendant, interviewed Defendant in his new office at the White House.  ECF No. 223-2 at 13.  At that interview Defendant allegedly made the statements that formed the basis for the false statements charge under 18 U.S.C § 1001 in this case.  *Id.* at 14-15.  Defendant resigned as National Security Advisor at the President's request on February 13, 2017.  ECF No. 150 at 9.

 In May 2017, Defendant's case was transferred to the Office of Special Counsel ("OSC"), which had taken over the Russia investigation.  *See* Miles Parks et al., *The James Comey Saga, In Timeline Form*, Nat'l Pub. Radio (last visited Sept. 28, 2020), https://n.pr/3cBeykC.  In exchange for cooperation with the OSC, Defendant agreed to plead guilty to one charge of violating § 1001 and admitted he had lied during the FBI interview on January 24, 2017, about the substance of his conversation with Ambassador Kislyak.  ECF No. 223-2 at 17-19.  After the Honorable Rudolph Contreras accepted Defendant's plea on December 1, 2017, the case was randomly reassigned to this Court, which held an extension of the plea colloquy on December 18, 2018.  *Id.* at 19-22.  The parties agreed to postpone sentencing so Defendant could complete his cooperation with the OSC.  *Id.* at 22.

 In June 2019, Defendant retained new counsel and, in January 2020, sought to withdraw his guilty plea and have the charge dismissed for prosecutorial misconduct.  *Id.*; ECF Nos. 151, 162.  That month, the Jensen Review began its investigation of the OSC prosecution at the direction of the Attorney General.  ECF No. 180.  In April 2020, the Jensen Review began transmitting new discovery material to defense counsel, which included a page of handwritten

notes that appeared to be written by Mr. Priestap—then the head counterintelligence official at the FBI—on the same day as Defendant's interview at the White House. *Id.* The notes include the passage: "What is our goal? Truth/Admission or to get him to lie, so we can prosecute him or get him fired?" The notes continue, "If we're seen as playing games, WH will be furious." ECF No. 190 at 4.

The notes were immediately seized on by defense counsel as evidence that the FBI had sought to entrap Defendant into lying, either to prosecute him or get him fired. Defendant's counsel and supporters claimed the notes were "smoking gun" evidence of FBI misconduct. Josh Gerstein et al., *Documents Show FBI Debated How to Handle Investigation of Michael Flynn*, Politico (Apr. 29, 2020), https://perma.cc/CAF2-MNF9.

A week later, on May 7, 2020, the United States moved to dismiss the charge against Defendant, also citing the Priestap handwritten notes as possible evidence that the interview was improper. Attorney General William Barr alleged during a media interview that the Jensen Review produced evidence that Defendant's FBI interview was a "perjury trap." Catherine Herridge, *Attorney General William Barr on Michael Flynn, Obamacare and Coronavirus Restrictions – Transcript*, CBS News (May 12, 2020), https://perma.cc/MWE8-U77B.

The meaning of the Priestap handwritten notes is therefore relevant to several issues of interest to the press and the public before the Court as it considers the government's Rule 48(a) motion, including (1) whether the Crossfire Razor investigation had appropriate predication; relatedly, (2) whether Defendant's allegedly false statements were material to a properly predicated investigation; and, (3) whether the interview on January 24, 2017, improperly sought to entrap Defendant.

4

Importantly, the Jensen Review interviewed Priestap on May 5, 2020, two days before the government moved to dismiss the case. ECF No. 210-1. To memorialize the interview, the FBI produced a standard interview form, an FD-302. *Id.* That Priestap FD-302 was transmitted to defense counsel on May 18, 2020, *id.*, but has not been made public, unlike a significant amount of other Jensen Review discovery material, including an FD-302 of an interview with FBI Special Agent William J. Barnett on September 17, 2020, critical of the Crossfire Razor investigation, ECF No. 249.

On May 13, 2020, *The New York Times* reported that Priestap provided additional context around his handwritten notes, specifically that he did *not* believe that the FBI was trying to "set [Defendant] up." *See* Appl., Exhibit A, Goldman and Benner, *supra*. In that story, the *Times* also reported that a "Justice Department official said that they were in the process of writing up a report on the interview and that it would soon be filed with the court." *Id.* Because of its salience to the questions the Court must resolve in deciding to grant or deny the government's Rule 48(a) motion to dismiss, the Priestap FD-302 is a judicial record subject to the common law right of access.

## ARGUMENT

### I.    The Priestap FD-302 is a judicial record presumptively open to the public.

"The common-law right of public access to judicial records 'is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch.'" *In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017)). As the D.C. Circuit has stated, public access to judicial records "serves the important functions of ensuring the integrity of judicial proceedings in particular and

of the law enforcement process more generally." *United States v. Hubbard*, 650 F.2d 293, 315 (D.C. Cir. 1980). Such public access thus plays a particularly vital role in matters that concern actions taken by the executive branch. As the U.S. Court of Appeals for the Seventh Circuit has explained, "in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Smith v. U.S. District Court*, 956 F.2d 647, 650 (7th Cir. 1992) (quoting *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).

In May, *The New York Times* reported that the Priestap FD-302 would "soon be filed with the court." *See* Appl., Exhibit A, Goldman and Benner, *supra*. The Priestap FD-302's status as a judicial record turns on its role in the adjudicatory process. It qualifies as a judicial record because it was submitted to inform the Court's decision to grant or deny the government's motion pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure. *See Metlife*, 865 F.3d at 666-67 (finding material provided for the Court's consideration in making its decision, including briefs and joint appendix, judicial records subject to *Hubbard* analysis). Indeed, the Priestap FD-302 qualifies as a judicial record even if the Court does not specifically refer or cite to it during the proceedings. That was the case in *Hubbard*. *See id.* ("We treated th[e] documents [in *Hubbard*] as judicial records [subject to the presumption of access and *Hubbard* balancing] notwithstanding that their 'contents were not specifically referred to or examined upon during the course of those proceedings and [their] only relevance to the proceedings derived from the defendants' contention that many of them were *not* relevant to the proceedings, *i.e.*, that the seizure exceeded the scope of the warrant.'").

Courts in other jurisdictions have ordered the public docketing of judicial records in circumstances similar to that presented by the Priestap FD-302. In other words, they have found

documents in the possession of the court that are central to the adjudicatory process to be judicial records subject to the presumption of access, even if not "formally filed" or docketed.  *See Alabama Dep't of Corrections v. Advance Local Media, LLC*, 918 F.3d 1161, 1167 (11th Cir. 2019) ("[W]e hold that materials submitted by the litigants—whether or not they are formally filed with the district court—that are integral to the judicial resolution of the merits in any action taken by that court are subject to the common law right of access and the necessary balancing of interests that the right entails.") (citation and internal quotation marks omitted); *see also Bond v. Utreras*, 585 F.3d 1061, 1073-75 (7th Cir. 2009) (holding that "the public has a presumptive right to access discovery materials that are filed with the court, used in a judicial proceeding, or otherwise constitute 'judicial records'"); *United States v. Wecht*, 484 F.3d 194, 208 (3d Cir. 2007) ("In general, the common law right attaches to any document that is considered a judicial record, which depends on whether [the] document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.") (citation and internal quotation marks omitted); *cf. Hubbard*, 650 F.2d at 405 n.11 ("[T]o state that materials are part of the record of the case does not answer the question whether they are or should be public. . . .  Depending on the circumstances, technical receipt in evidence may or may not weigh heavily in determining the answer to this question.").

Here, the Priestap FD-302 is integral to the proceedings before the Court and therefore a judicial record.  The question of what Priestap meant when he wrote "What is our goal? Truth/Admission or to get him to lie, so we can prosecute him or get him fired?" is central to an argument advanced by the government and Defendant in support of their motions to dismiss. That is, they argue, false statements cannot be material under § 1001 when made during an interview in an improperly predicated investigation, one that was intended to entrap Defendant.

*See* Gov't's Mot. to Dismiss, ECF No. 198 at 17 ("[T]he Government cannot explain, much less prove to a jury beyond a reasonable doubt, how false statements are 'material' to an investigation that—as explained above—seems to have been undertaken only to elicit those very false statements and thereby criminalize Mr. Flynn."); Supplement by Michael T. Flynn, ECF No. 181 at 2 ("These documents show in their own handwriting and emails that ["partisan FBI and DOJ leaders"] intended either to create an offense they could prosecute or at least get him fired."). Further, the government argues that the handwritten notes reflect an actual concern on Priestap's part "about the purpose and legitimacy of the interview and its investigative basis," Gov't's Resp. to Ct.-Appointed *Amicus Curiae*, the Honorable John Gleeson (Ret.), ECF No. 227 at 27, and that Priestap "questioned the purpose of the interview and whether it was going to be conducted in a manner that would to [sic] get the '[t]ruth' or instead would 'get [Flynn] to lie, so we can prosecute him or get him fired,'" *id.* at 25.

During oral argument on September 29, 2020, counsel for the United States again pressed this argument, referencing the Priestap handwritten notes at least twice in support of the government's contention that the top counterintelligence official at the FBI harbored concerns that the agents were trying to entrap Defendant during the January 24, 2017, interview. *See* Anna Salvatore and Benjamin Wittes, *Oral Argument Summary:  U.S. v. Flynn* (Sept. 29, 2020), https://perma.cc/DJS7-XQED ("[Acting Assistant Attorney General Kenneth] Kohl adds that one member of the FBI leadership ruminated in his notes 'what our goal' is in prosecuting Flynn—was it to get him fired."). Deputy Assistant Attorney General Hashim Mooppan cited the notes in connection with his comment to the Court, "What if it's true that it's a witch hunt?," and criticized the court-appointed amicus for not addressing these "contemporaneous notes" of the "FBI counterintelligence chief himself . . . raising questions about whether the" point of the

interview was to get Defendant to lie.  *See* Tierney Sneed and Josh Kevensky, *Sorry Mike Flynn, Judge Not Ready to Dismiss Your Case*, Talking Points Memo (Sept. 29, 2020), https://perma.cc/ SF5Y-DWTR; Oral Arg., Sept. 29, 2020.

Accordingly, the Priestap FD-302 is a central piece of evidence in this proceeding, as it would provide the Court with crucial context for Priestap's handwritten notes, which are heavily relied upon by Defendant and the government.  It is therefore a judicial record.

## II.    The strong presumption of public access to the Priestap FD-302 is not overcome.

There is a strong presumption in favor of public access to judicial records.  *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir.1996) ("[T]he starting point . . . is a 'strong presumption in favor of public access.'" (quoting *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991))); *see also Hubbard*, 650 F.2d at 317 (noting the "important presumption in favor of public access to all facets of criminal court proceedings").  That strong presumption in favor of public access to the Priestap FD-302 is not overcome here.

Under *Hubbard*, courts evaluating whether the presumption of access is overcome as to a given judicial record consider the following factors:  (1) the need for public access to the document at issue; (2) the public use of the document; (3) the fact of objection and the identity of those objecting to disclosure; (4) the strength of the generalized property and privacy interests asserted; (5) the possibility of prejudice; and (6) the purposes for which the document was

9

introduced in the proceeding.  *Hubbard*, 650 F.2d at 317–22.[1]  Here, the *Hubbard* factors weight heavily in favor of public access to the Priestap FD-302.

*First*, the public has a potent interest in access to the Priestap FD-302.  As noted above, the public's right of access to judicial records is of particular importance in matters in which the judicial branch is asked to "accede[] to the requests of a coordinate branch[.]"  *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008); *see also Hubbard*, 650 F.2d at 314–315 (noting that public access to judicial records "ensur[es] the integrity . . . of the law enforcement process more generally").  Here, it would be difficult to overstate the public's interest in Defendant's prosecution.  Again, while Applicant takes no position on the relief sought by the parties, Defendant was one of the most powerful national security officials in the country and a close ally of the President, who has repeatedly pressed the Justice Department to drop the case and then praised the decision to do so.  *See, e.g.*, Steven Nelson and Ebony Bowden, *Trump Calls Michael Flynn Prosecution 'Treason' Done by 'Human Scum'*, N.Y. Post (May 7, 2020), https://perma.cc/PF2E-7WT9.  Accordingly, the press and public have a powerful interest in understanding the strengths and weaknesses of *both* the OSC's decision to charge Defendant *and* the government's decision to abandon the case.  The Priestap FD-302 would significantly aid that understanding.

*Second*, *Hubbard* requires consideration of "the extent to which information sought [is] already in the public forum."  *In re New York Times Co.*, 585 F. Supp. 2d 83, 93 (D.C. Cir. 2008).  While the Priestap FD-302 is itself not yet public, the parties have filed a significant amount of Jensen Review discovery material on the public docket, including the handwritten

---

[1]  In *In re Application of N.Y. Times*, the Court limited the sixth factor to the facts of *Hubbard* and found it inapplicable to the determination of whether search warrant materials should be unsealed.  585 F. Supp. 2d 83, 93 (D.D.C. 2008).  Nonetheless, it too would support the common law right of access to the Priestap FD-302, and Applicant addresses it below.

notes that defense counsel has called some of the "most damning evidence" of prosecutorial misconduct.  ECF No. 228 at 20.  Additionally, members of the press have publicly reported that Priestap disagreed with defense counsel's and the government's interpretation of the handwritten notes.  *See* Appl., Exhibit A, Goldman and Benner, *supra*.  The public therefore has an interest in having access to the document in which the government memorialized Priestap's recollection of his thinking at the time.

With respect to the *third* and *fourth Hubbard* factors, no one has yet objected to the disclosure of the Priestap FD-302, or asserted any privacy interests therein.  To the extent such privacy interests may be asserted in the future, there is no indication that the material sought here contains any specific, intimate personal details, and a generalized privacy interest, without more, is insufficient to prevent disclosure.  *In re New York Times Co.*, 585 F. Supp. 2d at 93 (holding that statement that individual "wants 'to get on with his life,'" without more specific information, is not a "legally cognizable privacy interest"); *Hubbard*, 650 F.2d at 324 (stating that valid privacy interests arise in "intimate details of individual lives, sexual or otherwise").

*Fifth*, disclosure of the Priestap FD-302 will not prejudice any of the parties here.  On information and belief based on public reporting, the Justice Department is producing this discovery material to fulfill its perceived obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).  *See Behind the Justice Department's Split Over the Flynn Dismissal*, CNN (May 15, 2020), https://perma.cc/2GKD-Q3VA.  Further, the United States and the Defendant have made a voluminous amount of evidence in the case publicly available, including the transcripts of Defendant's call with Ambassador Kislyak, Fogel, *Transcripts*, *supra*; the FD-302 of Defendant's interview on January 24, 2017, ECF No. 62-1; and the Priestap handwritten notes, ECF No. 190 at 4.  *See also* Fifth Supplement in Supp. of Agreed Dismissal, ECF No. 257 at 1

("The defense has a continuing obligation to make a record that mandates this dismissal.").  On September 24, 2020, five days before oral arguments, the parties again filed supplements with the Court, including the FD-302 of William Barnett, an FBI agent assigned to Crossfire Razor, who was critical of the predication theory in the investigation.  ECF No. 249-1.  That there should be no prejudice from the release of the Priestap FD-302 is precisely what is driving the intense public interest in its contents.

Finally, the *sixth* factor also supports public access to the Priestap FD-302.  The material produced by the Jensen Review has been introduced in support of both the government's and Defendant's pending motions to dismiss and Defendant's motion to withdraw his plea.  According to the United States, the Jensen Review material is central to the claim that the January 24, 2017, interview was an attempt to "get [Defendant] to lie," as the Priestap handwritten notes purport to say.  The Priestap handwritten notes have been filed with the Court to support that contention, and the Priestap FD-302 is therefore important to aid the Court's understanding of that claim.  Accordingly, the Priestap FD-302 is a key piece of evidence relevant to the questions the Court must resolve.

In sum, the strong presumption in favor of public access with respect to the Priestap FD-302 cannot be overcome.  The Priestap FD-302 should be filed on the public docket to complete the record and aid the public understanding of this case.

## **CONCLUSION**

For the foregoing reasons, Applicant respectfully requests that the Court grant its Application and enter an order directing the Clerk of the Court to place the Priestap FD-302 on the public docket.

Dated:  October 1, 2020                    Respectfully submitted,

                                           _/s/ Gabriel Rottman_
                                           Gabriel Rottman
                                           D.C. Bar No. 992728
                                           The Reporters Committee for
                                             Freedom of the Press
                                           1156 15th St. NW, Suite 1020
                                           Washington, DC 20005
                                           Phone: 202.795.9300
                                           Facsimile: 202.795.9310
                                           grottman@rcfp.org